United States District Court
Northern District of New York

|  |  |
|---|---|
|  | Jury Trial Demanded |
| Eric Casey |  |
| Plaintiff | Civil Rights Complaint |
| vs. | Pursuant to |
| New York State Correctional Officers: | 42 U.S.C. section 1983 |
| M. Brockley; H. Colvin; A. Mayo; | Case No. |
| C. Goodrich; and Wanninger; |  |
| Registered Nurses: |  |
| H. Clapper; T. Hermance; and Boyce; |  |
| Superintendent: |  |
| S. Racette |  |

Plaintiff in the above-captioned action alleges as follows:

## Jurisdiction

1. This is a civil action seeking relief and damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 USC section 1983. The Court has jurisdiction over the action pursuant to 28 USC sections 1331, 1343(3) and (4) and 2201.

1

## Parties

2. Plaintiff: Eric Casey 95A8346, Great Meadow Correctional Facility (hereinafter GMCF), Box 51, Comstock, NY, 12821

3a. Defendant: M. Brackley, N.Y.S. Correctional Officer, GMCF, Comstock, N.Y., 12821

b. Defendant: H. Colvin, N.Y.S. Correctional Officer, GMCF, Comstock, N.Y., 12821

c. Defendant: A. Mayo, N.Y.S. Correctional Officer, GMCF, Comstock, N.Y., 12821

d. Defendant: C. Goodrich, N.Y.S. Correctional Officer, GMCF, Comstock, N.Y., 12821

e. Defendant: Wanninger, N.Y.S. Correctional Officer, GMCF, Comstock, N.Y., 12821

f. Defendant: H. Clapper, Registered Nurse, GMCF, Comstock, N.Y., 12821

g. Defendant: T. Hermance, Registered Nurse, GMCF, Comstock, N.Y., 12821

h. Defendant: Boyce, Registered Nurse, GMCF, Comstock, N.Y., 12821

i. Defendant: S. Racette, Superintendent, GMCF, Comstock, N.Y., 12821

## Previous Lawsuits

4. Plaintiff's previous actions were filed many years ago and, upon recollection, in the year 1999, he settled an action in the amount of six thousand seven hundred ($6,700) dollars in the U.S. District Court, Eastern District of New York, then Magistrate Judge Gary L. Sharpe presiding.

Also, around the year 2001, plaintiff filed an action in the U.S. District Court, Northern District of New York, then U.S. District Court Lyle E. Strom presiding, ending in a jury's verdict for the defendants.

Place of Confinement Where Action was Commenced

5. There is a prisoner grievance program at GMCF and plaintiff presented the facts relating to his complaint to this grievance program by filing a formal grievance with the program grievance clerk. The grievance, numbered GM-55615-13, was forwarded to the superintendent, S. Racette, for a response. Plaintiff allowed the superintendent more than his allotted twenty-five days to respond but he failed to do so. Thereafter, plaintiff filed a formal Notice of Decision to Appeal to Central Office Review Committee (CORC) with the program clerk. However, the supervisor replied by requesting an extension for a superintendent's response, reasoning that CORC will not render a decision on the grievance until the superintendent's "investigation" concluded. Recognizing the catch-22, plaintiff denied the supervisor's extension request and restated his statutory right to appeal to CORC absent a superintendent's response. The supervisor complied and filed plaintiff's appeal to CORC on July 29, 2013. Plaintiff allowed CORC more than its allotted thirty days to respond and they failed to do so. As such, plaintiff's administrative remedies were unavailable and he commenced an action on October 15, 2013. Casey v. Brockley et al., 13-CV-1271 (DNH, TWD).

4

This action was dismissed without prejudice, giving plaintiff the opportunity to amend and refile the complaint.

Neither this Court nor CORC has provided plaintiff with anything which indicates that CORC has responded to the grievance.

Accordingly, pursuant to Judge Hurd's Decision and Order dated December 3, 2015, plaintiff's administrative remedies are deemed unavailable. This amended complaint caused

4A

## Statement of Facts

I was transferred to GMCF in June 2010, to enroll in therapeutic programs in time for my original Conditional Release date of February 23, 2016. Occasionally officers and I quarreled; but one officer, Sicks-Monroe, began to seriously harass me. She fabricated a misbehavior report accusing me of, among other things, lewd conduct.[FN1] Though she falsified that report, she did cease the harassment but not before dishing the dirt on me to another female officer named C. Desantis.

Officer Desantis played an integral part in events leading up to the brutal assault upon me. Her harassment was beyond compare. She allowed inmates to steal property from my cell, fabricated a report on me, and on numerous occasions attempted to have me assaulted by other officers. Her threats, gossip, and lies made me vulnerable such that I feared for my safety. I filed a formal grievance about her conduct and requested Protective Custody.

---

FN1  See attached disciplinary report. Note: This report is not on my institutional record because it was discovered that officer Sicks-Monroe fabricated the report. Initially though, I was assessed one-year in Special Housing Unit and one-year recommended loss of goodtime. I did not appeal the determination, it was automatically expunged from my record by then Superintendent, Norman Bezio, since she falsified the report.

The Superintendent denied my Protective Custody request using his customary language that "the grievant has not provided a single witness to this incident." However, contrary to his common practice, I met the heightened burden he places on grievants by stating in no uncertain terms that an officer-witness is willing to attest to officer Desantis' diabolical misconduct towards me.

My grievance clearly put the Superintendent on notice that I was in imminent danger of being assaulted by guards and protective action is necessary. While this information seemingly should have given him pause, at the very least, to verify my safety concerns through the officer-witness, it did not. He denied my grievance without affording me the opportunity to produce the officer-witness. I appealed his decision to CORC. (see attached grievance and appeal).

Despite taking the appropriate recourse, the Superintendent's denial and CORC's three-month neglect of my Protective Custody request forced me to remain in the general population among Desantis and officers she influenced, particularly, officer M. Brockley.

Officer Brockley stood out as the most dedicated champion for officer Desantis. He constantly harassed me up until he realized his chance to orchestrate a malicious gang assault upon me.

6

Day Before The Incident

On May 21, 2013, the day before the incident, officers Waronges, Desantis, and Brockley were stationed in C-Block, which was where I housed. My evening routine was to go eat dinner then step off at the facility hospital and mental health unit to receive medications. While I was en route to the mental health unit, officer Brockley -- after leaving from near C-Block desk and walking roughly one-hundred yards -- confronted me at the medication window with fictitious allegations of a movement violation. A heated exchange ensued which led to him grabbing and slapping an apple out of my hand, roughly searching me, then escorting me back to my cell.

Day Of The Incident

The following day, May 22, 2013, at approximately 5 p.m., while returning to my cell after receiving my medications I, as usual, walked up C-1 company. As I entered the stairwell area I was hit from behind in the back of my head with a hard object. I fell to the floor and was brutally beaten by correction officers M. Brockley, H. Calvin, A. Haya, C. Goodrich, and Waronges. I was kicked, stomped, sexually humiliated, and beat with sticks all over my body including my head and face, which was grossly swollen as a result. While the beating took place, I was referred to as "Rodney King" and other racial and sexual slurs.

7

When I was on the floor officer Brockley instructed officers Colvin and Goodrich to grab, lift, and spread my legs. When they complied I realized officer Brockley's intention was to have an unobstructed path to my groin area as he began kicking me in the groin. As I struggled to free my legs officer Wanwager struck me multiple times in my face and head with her baton while officer Mayo cudgeled my knees, shins, and ribs. The beating lasted in the region of five minutes and as a group they maliciously and sadistically inflicted pain and serious injuries upon me. Thereafter, I was placed in mechanical restraints and henceforth under videotape recording.

    Subsequently, I was taken to the facility hospital presumably to have my injuries treated. Nurses Boyce and Clapper conducted my examination and preparation of my injury report, signed by nurse Clapper. According to this report, I received First Aid care and the only injuries I sustained were a few superficial abrasions. However, given the length and breadth of the below-mentioned injuries I incurred,[FN2] I contend that nurses Boyce and Clapper intentionally downplayed the severity of my injuries while disregarding the more serious ones, as they were not mentioned in my Injury Report.

---

FN2    see First Cause of Action and attached Inmate Injury Report.

8

Nurse Clapper's indication on my Injury Report that I received First Aid care is belied by the evidence. As it happens, my entire examination was videotaped and her initial entrance into the exam-room is the one fleeting glimpse of her on tape. After that, she questioned me from afar. Not once did she come in close proximity, much less provide First Aid care as she noted in my Injury Report. Nurse Boyce managed to come within a foot of me to electronically check my vital signs. As she await the reading however, the video clearly depict her indifference to my battered face, even though she stood just inches from it. Needless to say, some of my injuries were of a kind warranting emergency care, e.g., left rib, shin bone, pinky bone, and shin laceration. Sadly though, the only services provided by Clapper and Boyce was a vital signs check.

    Nurse Hermance, rather than medically caring for me, a seriously injured patient, utilized her time falsifying business records to indicate that officers Colvin and Moye were injured when, in truth, they were not. Her most outstanding misconduct occurred when she falsified officer Brockley's Employee Injury Report claiming he suffered from a swollen left jaw and lower teeth loss. (see attached Sergeant Livermore's memo referencing staff evaluations conducted by Nurse T. Hermance).

    In sum, I knew I was in danger of being assaulted by guards. I took the appropriate recourse of informing Superintendent via formal grievance and asking him to protect me. He failed to protect me and I was eventually beaten by guards and denied medical care. Accordingly, my Federal Constitutional rights were violated as follows:

## First Cause of Action
### Unjustified Excessive Force; Prison Guard Brutality

Plaintiff's Eighth Amendment Constitutional right to be free from cruel and unusual punishment was violated by correctional officers Wanninger, H. Brockley, A. Mayo, H. Calvin, and C. Goodrich when they administered unjustified excessive force maliciously and sadistically on plaintiff for the very purpose of causing him harm and injuries that violated contemporary standards of decency. U.S.C.A. Const. Amend. 8, Whitley v. Albers 475 US 312 (1986)

These officers acted in concert to commit the crime of gang assault when they maliciously and sadistically beat plaintiff for approximately five minutes causing him pain and, in addition to injuries listed in his inmate injury report, the following injuries:

1. swelling above his left eye (see picture 1)
2. three linear-shaped abrasions above left eye swelling
3. bruise on the left side of his face
4. swelling to the left side of his face (see picture 3)
5. swelling above his right eye (picture 2)
6. swelling to his upper right forehead (pictures 2, 3, 4, and 5)
7. swelling near the center of his back (pictures 8 and 9)
8. linear-shaped laceration on his left shin (picture 10)
9. left shin bone injury; right knee injury
10. left pinky bone injury
11. left rib injury (picture 11)

## Second Cause of Action
### Inadequate Medical Care

Plaintiff's Eighth Amendment Constitutional right to receive adequate medical care was violated by Nurses Boyce, H. Clapper, and T. Hermance when they knew of and disregarded an excessive risk to plaintiff's health by showing deliberate indifference to his serious injuries and medical needs resulting in the unnecessary and wanton infliction of pain, violating contemporary standards of decency. U.S.C.A. Const. Amend. 8; Estelle v. Gamble 429 US 97 (1976).

Nurses Boyce and Clapper intentionally downplayed the severity of plaintiff's injuries by denominating them as superficial and disregarding his more serious injuries (outlined above in First Cause of Action) by omitting them from his Inmate Injury Report and not treating them.

Nurse Hermance, rather than provide medical care to plaintiff, a seriously injured patient, utilized her time falsifying business records to indicate that those officers were injured, particularly, officer H. Brockley's Employee Injury Report stating he incurred as injuries a swollen left jaw and tooth loss.

11

### Third Cause of Action
Personal Involvement of Superintendent S. Racette in Eighth Amendment excessive force violation

Plaintiff's Eighth Amendment Constitutional right to be free from cruel and unusual punishment, i.e., unjustified excessive force administered maliciously and sadistically on plaintiff for the very purpose of causing him harm, was violated by defendant Racette, to wit:

A. Defendant Racette failed to remedy the violation after being informed of the violation through a report

Defendant Racette failed to remedy with protective action a substantial risk of serious harm to plaintiff despite plaintiff's formal grievance of being in imminent danger via guard brutality and his request for protection.

B. Defendant Racette created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue.

Defendant Racette created a policy or custom under which unconstitutional practices occurred, as it could be reasonably inferred that his policy or custom of not formally responding to inmates excessive force grievances despite knowing regulations require him to, Title 7 NYCRR section 701.8(f)(g)(h), sent a message to abusive guards that excessive force will be overlooked at the facility level at Great Meadow

Even if the policy or custom of not formally responding to inmates excessive force grievances was in place prior to him becoming Superintendent, he allowed this policy or custom to continue.

C. Defendant Racette exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Since defendant Racette took over as Superintendent at GMCF, numerous use-of-force incidents occurred in the stairwells and other unsurveilled locations within the prison and most, if not all, share the common theme that the inmate aggressed by striking the guard. Because the contents of these use-of-force reports are information indicating the stairwells and other unsurveilled locations are selected areas for use-of-force incidents, a permissible inference exist that Racette was put on notice that unconstitutional acts were occurring in these selected areas and he was deliberately indifferent to the rights of inmates by failing to take corrective steps to reduce these incidents.

Faced with a use-of-force pattern occurring in unsurveilled areas, particularly, the stairwells, defendant Racette has the authority to take measures to try to ensure inmate safety, including installing surveillance cameras, assigning supervisory staff to stairwells during inmate movement, and frequently rotating guards as to avoid stationing together or coalescence of abusive guards.

From the time Racette became Superintendent up until May 22, 2013, the incident date, he did not implement any of the aforementioned, reasonable, protective measures to reduce use-of-force incidents in unsurveilled areas.

## Prayer for Relief

Wherefore, plaintiff request that this Court grant the following relief:

Physical Injury: Compensatory damages in the amount of fifty-thousand dollars as to each defendant;

Mental/Emotional Distress: Compensatory damages in the amount of fifty-thousand dollars as to each defendant;

Punitive damages in the amount of one-hundred-thousand dollars as to each defendant;

And for other and further relief as this Court deems just and proper.

Dated:

Eri Casey

14

Verification

I, Eric Casey, am a parolee presently residing at 385 E. 16st apt. 2D, Brooklyn N.Y., 11226.

I understand that false statements made in the foregoing document are punishable as a Class A misdemeanor pursuant to section 210.40 of the New York State penal law.

I further understand that offering or presenting the foregoing document to a judicial officer, knowing or believing it will be filed that officer and knowing it contains false statements is also punishable as a Class A misdemeanor pursuant to section 175.30 of the New York State penal law.

Accordingly, I declare under penalty of perjury that the annexed document is true and correct.

Executed on: 1·22·16

Eric Casey